# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Clarence Maddox,
     Petitioner,

     vs.

                         Case No. 1:09cv480
                         (Dlott, C.J.; Hogan, M.J.)

Warden, Ohio State Penitentiary,
     Respondent.

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Ohio State Penitentiary in Youngstown, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2007 convictions in the Hamilton County Court of Common Pleas on charges of rape of his minor daughter. Various pleadings (including the petition, respondent's return of writ and trial record) have been placed under seal to protect the identity of the child victim. (*See* Doc. 30; *see also* Docs. 27-29). The case is now before the Court on the petition (Doc. 3); respondent's return of writ with exhibits, including the trial transcript (Doc. 15); a videotaped interview of the victim by a social worker in May 2004, which was admitted into evidence at trial as State's Exhibit 8 and filed by respondent in the instant action in accordance with an order issued by this Court on December 16, 2009 (Doc. 33; *see also* Doc. 19); and numerous pleadings filed by petitioner, which have been included in the record as additional support for the petition or as responses to the return of writ (*see* Docs. 4, 23, 27, 28, 29, 38, 43).[1]

---

[1] In a separate Order issued this date, the Court has ruled on numerous pending non-dispositive motions filed by petitioner. (*See* Docs. 23, 24, 28, 34, 35, 38, 39, 41). Two of these motions have been construed as pleadings filed in support of the petition or in response to the return of writ (*see* Docs. 23, 38); they, therefore, are part of the record considered herein in addressing petitioner's grounds for relief. Another motion was granted (Docs. 28) to the extent that the record has been expanded to include documents attached to that motion.

## Background

On December 3, 2004, the Hamilton County grand jury returned an indictment in Case No. B-0409448 charging petitioner with the following four counts of forcible rape of his daughter in violation of Ohio Rev. Code § 2907.02(A)(2): (1) vaginal intercourse "on an undetermined date" between January 1 and June 29, 2001; (2) anal intercourse "on an undetermined date" between January 1 and June 29, 2001; (3) fellatio "on an undetermined date" between June 1 and September 1, 2003; and (4) vaginal intercourse "on an undetermined date" between June 1 and September 1, 2003. (Doc. 15, Ex. 1) (sealed). On October 17, 2006, the Hamilton County grand jury returned another indictment in Case No. B-0609678 charging petitioner with four additional rape counts based on the same conduct. In the new counts, petitioner was charged with violating Ohio Rev. Code § 2907.02(A)(1)(b) by engaging in the four offenses with a minor "who was less than thirteen years of age, whether or not the defendant knew the age of the victim." (*Id.,* Ex. 2) (sealed).

The indictments were joined, and the matter proceeded to trial before a jury in December 2006. (*See id.,* Brief, p. 4 & Exs. 3-4) (sealed). Before the jury reached a verdict in that trial, petitioner's counsel filed a motion for mistrial based on alleged juror misconduct, which was granted. (*See id.,* Exs. 5-6) (sealed). A new jury trial was held in April 2007. After hearing all the evidence, the jury acquitted petitioner on the anal intercourse counts, and found him guilty on all other charges. (*Id.,* Ex. 7) (sealed).

On June 15, 2007, prior to sentencing, petitioner's trial counsel filed a motion for new trial on petitioner's behalf; the motion was denied. (*See id.,* Exs. 10-11 & Trial Tr. 1130-37) (sealed). At the sentencing and sexual classification hearing held the same date, petitioner was adjudicated to be a "sexual predator." (*See id.,* Trial Tr. 1152-53) (sealed). Petitioner was sentenced in Case No. B-0609678 to three consecutive life terms of imprisonment to be served concurrently to the sentence imposed in Case No. B-0409448; in Case No. B-0409448, he was sentenced to three consecutive ten-year terms of imprisonment to be served concurrently to the sentence imposed in Case No. B-0609678. (*Id.,* Ex. 9 & Trial Tr. 1172-74) (sealed).

With the assistance of new counsel for appeal purposes, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District; in the memorandum filed by counsel, petitioner presented five assignments of error, including the following claims:

2

1. The trial court erred as a matter of law by permitting the State to introduce a prior consistent statement of the alleged victim during rebuttal.

2. The evidence was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain appellant's convictions for rape.

(*Id.,* Docs. 17, 20) (sealed).

On July 11, 2008, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.,* Ex. 22) (sealed). In its Decision, the court made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1), based on the evidence presented at trial:[2]

The victim in this case was born in 1996. In the summer of 2000, the victim's mother, Tammy Spikes, abandoned the victim at the doorstep of Maddox's mother. At the time the victim went to live with her grandmother, Maddox was imprisoned.

After Maddox was released from the penitentiary in January 2001, he had frequent contact with the victim at his mother's house. The victim testified that, shortly after Maddox's return, he had shown her pornographic movies and had put his penis in her mouth and on her "private parts."

After the victim had complained of vaginal soreness or irritation, her grandmother took her to be examined at Cincinnati Children's Hospital, where she was diagnosed with vaginal and anal chlamydia in June 2001. According to the victim, she had told her grandmother about the sexual abuse, but her grandmother denied that she had done so. In any event, no charges were filed against Maddox at that time.

---

[2]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein. Therefore, he has not shown that such findings are erroneous.

After Maddox's release from prison, Spikes resumed contact with the victim. In 2004, the victim informed Spikes that, during the previous summer, Maddox had taken her to his residence and had placed his penis in her mouth and had rubbed his penis on her private parts. Spikes took the victim to Cincinnati Children's Hospital, where the victim told hospital personnel and the police about the sexual abuse.

The state presented evidence that, between 2001 and 2004, Maddox had gone to the University of Cincinnati Hospital approximately 20 times complaining of symptoms consistent with sexually transmitted diseases. Though Maddox had been diagnosed with chlamydia only once–in July 2003–the state's expert, Dr. Robert Shapiro, testified that it was common practice for hospitals to simply provide medication to treat sexually transmitted diseases rather than to expend the resources to test for their presence.

Shapiro also testified that the only means of transmitting vaginal and anal chlamydia, other than through childbirth, was through penetration. He indicated that, based upon the victim's statements, the prior diagnosis of chlamydia, and a 2004 physical examination of the victim that included reports of vaginal pain and difficulty urinating, there was evidence of sexual conduct.

Maddox took the stand in his own defense and denied any sexual conduct with the victim. The defense's theory was that Spikes had fabricated the allegations of sexual abuse to gain custody of the victim. According to Maddox's trial testimony, the allegations were the product of an attempt by Spikes, the police and the trial prosecutor to "blackmail" the victim.

In response to the allegations of improper influence on the victim, the state presented a videotaped statement that the victim had given in 2004. In the statement, the victim described the instances of sexual abuse that were the basis of the charges against Maddox.

(*Id.,* pp. 2-4).

Proceeding *pro se*, petitioner timely appealed to the Ohio Supreme Court, raising as propositions of law the two claims of error that had been presented to the Ohio Court of Appeals challenging the sufficiency and weight of the evidence and the

admission of the victim's videotaped statement in rebuttal as a "prior consistent statement." (*See id.,* Exs. 23-24) (sealed). On January 28, 2009, the Ohio Supreme Court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 25) (sealed).

Petitioner filed three *pro se* petitions for post-conviction relief with the trial court while his direct appeal was pending before the Ohio Court of Appeals for ruling. (*See id.,* Exs. 12-14) (sealed). The petitions were denied by the trial court in two Entries filed on May 15, 2008. (*See id.,* Ex. 16) (sealed). Apparently, petitioner did not pursue an appeal from the denial of his petitions for state post-conviction relief.

On August 7, 2008, after the Ohio Court of Appeals issued its Decision on direct appeal, petitioner filed a timely *pro se* application under Ohio R. App. P. 26(B) for reopening of the appeal with the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 26) (sealed). Petitioner alleged in the application that he was denied the effective assistance of appellate counsel stemming from counsel's failure to raise the following assignments of error on direct appeal:

> 1. The trial court erred as a matter of law allowing multiple hearsay not consist[e]nt with [the victim's] trial [testimony] to be taken into the jury room as rebuttal evidence....
>
> 2. The trial court erred by violating substantial rights of the appellant by allowing inadmissible character hearsay and rape shield law evidence to be taken in the jury room for rebuttal.
>
> 3. The evidence is against the manifest weight to sustain a conviction for Count[s] 3 and 4 and due process to a fair trial....

(*Id.*).

On March 5, 2009, the Ohio Court of Appeals denied petitioner's reopening application, reasoning as follows:

> App. R. 26(B)(2)(c) requires that an application to reopen an appeal set forth "assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court."
>
> In his application, Maddox contends that his appellate counsel was

5

ineffective in advancing his second assignment of error, challenging the trial court's admission of his victim's prior out-of-court statements. Appellate counsel, Maddox insists, should have argued that the statement was inadmissible under Evid.R. 801(D)(1)(b), to the extent that it was inconsistent with the victim's trial testimony, and under Evid.R. 404 and R.C. 2907.02(D), to the extent that it included statements concerning his sexual activity with a 16-year-old girl. But appellate counsel, in her brief, did challenge the admissibility of the evidence under Evid.R. 801(D)(1)(b), Evid.R. 404, and R.C. 2907.02(D). And in our decision on appeal, we overruled the second assignment of error upon our determination that the victim's prior statement was not hearsay, that it was admissible under Evid.R. 801(D)(1)(b) because it was not materially inconsistent with her trial testimony and was offered to rebut a charge against the victim of improper motive, and that Maddox was not prejudiced by the trial court's failure to excise the portions of the statement not directly related to his sexual assaults upon the victim.

Maddox also contends that his appellate counsel was ineffective in advancing his challenge in his third assignment of error to the balance struck by the jury in weighing the evidence on counts three and four of the indictment. He asserts that counsel should have argued that the victim's testimony concerning her age at the time of the offenses charged in those counts did not support his convictions on those counts. But in overruling the assignment of error, we specifically concluded that, despite "certain inconsistencies in the victim's testimony about the time and place of the sexual assaults [charged in those counts,] *** we cannot say that the jury lost its way in finding Maddox guilty."

Thus, in our decision, we fully considered on the merits the assignments of error and arguments in support of the assignments of error that Maddox proposes here....

(*Id.,* Ex. 28) (sealed) (footnotes omitted). Petitioner, apparently, did not appeal this decision to the Ohio Supreme Court.

On April 27, 2009, petitioner filed another *pro se* application for reopening of the direct appeal under Ohio R. App. P. 26(B) with the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 29) (sealed). He contended in the second reopening application that his appellate counsel was ineffective for failing to flag claims challenging (1) the effectiveness of trial counsel and (2) the admission of the rebuttal

videotaped statement of the victim as a violation of the Confrontation Clause. (*Id.,* p. 2). On May 28, 2009, the Ohio Court of Appeals overruled the application on the ground that petitioner had "failed to provide sufficient reasons for failure to raise his issues in the first application under App. Rule 26(B) or seek leave to amend the first application in a timely manner." (*Id.,* Ex. 31) (sealed).

Thereafter, petitioner filed a *pro se* appeal to the Ohio Supreme Court, alleging as propositions of law:

> 1.   It was ineffective assistance of appe[llate] counsel not to put [i]neffective assistance of trial counsel in brief.
>
> 2.   It was ineffective assistance of appe[llate] counsel not to put Confrontation Clause in brief for hearsay on Exhibit 8 rebuttal video cd not consist[e]nt with [the victim's] trial [testimony].

(*Id.,* Exs. 33-34) (sealed).  On August 26, 2009, the Ohio Supreme Court summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 36) (sealed).

Petitioner filed the instant federal habeas corpus petition in July 2009. (*See* Doc. 3) (sealed).  He alleges four grounds for relief:

> **Ground One:**  Due Process and fair trial for ineffective assistance of trial counsel.  It is plain error not to object to multiple hearsay not consist[e]nt with [the victim's] trial [testimony] on [State's] Exhibit 8.
>
> **Ground Two:** Due Process for insufficient evidence and/or weight of the evidence for count one vaginal intercourse on both indictments. Element [of penetration] not proven.
>
> **Ground Three:**  Due Process to a fair trial for insufficient evidence and/or weight of evidence for count[s] 3 and 4 on both indictments[;] no evidence was presented[,] direct or circumstantial[,] for count[s] 3 and 4 time frame or year.  Element of location is not proven.
>
> **Ground Four:**  Due Process and ineffective assistance of appe[llate] counsel [based on (1) counsel's failure to raise on appeal an ineffective

assistance of trial counsel claim requested by petitioner; (2) her failure to argue "constitutional violations for 2nd assignment" of error; (3) her delay in responding to petitioner, which caused petitioner to miss the deadline for filing a timely appeal to the Ohio Supreme Court from the denial of his first reopening application; and (4) her failure to "argue assignments of error properly," as well as her disregard of "multiple facts in the record."]

(*Id.*, pp. 6, 8, 9, 11).

## OPINION

### A. Petitioner Has Waived The Ineffective Assistance Of Trial Counsel Claim Alleged In Ground One Due To His Procedural Defaults In The State Courts

In Ground One of the petition, petitioner essentially claims that his trial counsel was ineffective because, although he objected to the admission of the victim's videotaped interview with a social worker in May 2004 under Ohio R. Evid. 801(D)(1)(b) as a "prior consistent statement" to rebut petitioner's charge that the victim was improperly influenced to testify falsely against him, counsel failed to argue that the videotape contained "multiple hearsay" that was not consistent with the victim's trial testimony. (Doc. 3, p 6; *see also* Doc. 4, pp. 1-4) (sealed).[3] In the return of writ filed in response to the petition, respondent contends that petitioner has waived this ground for relief because it was "never fairly presented" to the state courts. (*See* Doc. 15, Brief, pp. 11-26) (sealed).

In recognition of the equal obligation of the state courts to protect the

_____

[3]It is noted that petitioner's trial counsel did "strenuously object" to the admission of the videotape on other grounds. (*See* Doc. 15, Trial Tr. 926) (sealed). Specifically, counsel contended that the videotape did not meet the requirements for admissibility under Ohio R. Evid. 801(D)(1)(b) because the "improper influence" on the victim occurred in November 2003, when the victim moved in with her mother, months before the videotaped interview took place. (*Id.*, Tr. 926-28). Counsel also argued that "it would be highly prejudicial" to admit the videotape into evidence because "it's basically allowing [the victim] to testify again to where she's not under ... cross-examination." (*Id.*, Tr. 928). Finally, when the court allowed the videotape into evidence, counsel requested that the jury be instructed "that they are not to consider [it] for the truth of the matter [contained in] the statements ..., but only for the limited purpose of countering any allegation" of improper influence. (*Id.*, Tr. 969-70).

constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If a petitioner fails to fairly present a claim through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of such claim by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue the claim in the state courts, his claim for habeas corpus relief is subject to dismissal with prejudice on the ground that it is waived. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 847-48 (1999); *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, the petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to the state courts, he has waived such claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, although petitioner argued in the direct review proceedings that the trial court erred in allowing the victim's prior videotaped statement into evidence, he committed a procedural default by failing to raise either on direct appeal to the Ohio Court of Appeals or on further appeal to the Ohio Supreme Court any corollary claim challenging the effectiveness of trial counsel when arguing against the admission of the videotape at trial. (*See* Doc. 15, Exs. 20, 24) (sealed). Petitioner also did not assert the specific claim alleged in Ground One of the petition as a claim of error in any of his post-conviction petitions filed with the trial court during the pendency of the direct appeal. (*See id.,* Exs. 12-14) (sealed). Even if he had raised such a claim in a post-conviction petition, petitioner committed another procedural default by failing to appeal the trial court's entries denying post-conviction relief. Because petitioner thus did not provide the state's highest court with the opportunity to consider the claim alleged in Ground One on the merits, the claim is barred from review absent a showing of cause and prejudice or that a "fundamental miscarriage of justice" will result if the claim is not considered herein. *See Coleman,* 501 U.S. at

750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not alleged or otherwise demonstrated that failure to consider the ineffective assistance of trial counsel claim will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Petitioner has argued both in his second application for reopening of the direct appeal and in Ground Four of the instant petition that his appellate counsel was ineffective in failing to assert a claim challenging the effectiveness of trial counsel on direct appeal. (*See* Doc. 3, p. 11; Doc. 15, Ex. 29, p. 2). Ineffective assistance of counsel may constitute cause for a procedural default. *See, e.g., Murray,* 477 U.S. at 488. However, in order to establish cause based on this argument, the ineffective assistance of counsel claim itself must not be procedurally-defaulted. *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Richey v. Mitchell,* 395 F.3d 660, 679 (6ᵗʰ Cir.), *rev'd on other grounds,* 546 U.S. 74 (2005) (*per curiam*).

Here, petitioner procedurally-defaulted the ineffective assistance of appellate counsel claim alleged as "cause" for his default of the underlying ineffective assistance of trial counsel claim alleged in Ground One because he did not raise it in his first timely-filed reopening application. It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris* 489 U.S. at 260-62. The "adequate and independent state ground" doctrine has been applied to state court decisions refusing to address the merits of a federal claim because of violations of state procedural rules. *Id.* at 261; *see also Sykes,* 433 U.S. at 86-87; *McBee,* 763 F.2d at 813.

Such a procedural default does not bar consideration of the federal claim unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on the state procedural bar. *Harris,* 489 U.S. at 263. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

The Ohio Court of Appeals, which was the only state court to issue a reasoned

decision in ruling on petitioner's second reopening application, clearly and expressly relied on petitioner's procedural default when it overruled the application on the ground that petitioner had not provided "sufficient reasons" for his failure to raise the new claims earlier in the first application for reopening or by way of a timely motion to amend the first application. (*See* Doc. 15, Ex. 31) (sealed). The Ohio Supreme Court's later unexplained decision summarily dismissing petitioner's appeal from the denial of the second reopening application "as not involving any substantial constitutional question" must be presumed to rely on the same procedural default. *See Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

Petitioner has shown neither cause and prejudice nor that a fundamental miscarriage of justice will occur stemming from his procedural default of his ineffective assistance of appellate counsel claim. Therefore, petitioner cannot rely on that argument as "cause" for his procedural default of the underlying ineffective assistance of trial counsel claim alleged in Ground One of the petition.

Accordingly, in sum, in the absence of a showing of cause and prejudice or of a fundamental miscarriage of justice, the Court concludes that the claim for relief alleged in Ground One has been waived and is thus barred from review in this federal habeas proceeding.

B. **Petitioner Is Not Entitled To Relief Based On The Claims In Grounds Two And Three Challenging The Sufficiency And Weight Of The Evidence**

In Grounds Two and Three of the petition, petitioner alleges that his convictions were obtained in violation of due process because the jury's verdicts of guilt are not supported by sufficient evidence and are against the manifest weight of the evidence. (Doc. 3, p. 6) (sealed).

As an initial matter, to the extent petitioner alleges the verdicts of guilt are against the manifest weight of the evidence, his claim is not cognizable in this federal habeas proceeding. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v.*

11

*McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.), *cert. denied,* 540 U.S. 930 (2003).

Petitioner's manifest-weight-of-the-evidence claim raises an issue of state-law only. *See Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982); *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997).[4] Therefore, only petitioner's sufficiency of evidence claims trigger federal due process issues subject to review on the merits herein.

In this case, the Ohio Court of Appeals was the only state court to address the merits of petitioner's claims challenging the sufficiency of evidence, which were raised on direct appeal. Citing only state case-law, the court overruled the claims of constitutional error, as well as the claims of error under state law, reasoning in pertinent part as follows:

> In the review of the sufficiency of evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."...

> R.C. 2907.02(A)(1)(b) provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender *** when *** [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

> Under R.C. 2907.01(A), sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any

---

[4]It is noted that *Thompkins* was superseded on other grounds by state constitutional amendment allowing for state supreme court review of manifest-weight-of-the-evidence claims in death penalty cases. *See State v. Smith,* 684 N.E.2d 668, 683-84 & n.4 (Ohio 1997), *cert. denied,* 523 U.S. 1125 (1998).

instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

Maddox's convictions were in accordance with the evidence. The victim's testimony established that Maddox had placed his penis in her mouth and had rubbed his penis on her vagina. The diagnosis of the victim with chlamydia in 2001, coupled with Maddox's numerous treatments for sexually transmitted diseases, including chlamydia, indicated that vaginal penetration had occurred. With respect to the 2003 incidents, the victim's testimony, her statements to investigators and medical personnel, and the testimony of Dr. Shapiro supported the jury's finding of sexual conduct under R.C. 2907.01(A).

And while the victim did not testify that Maddox had used actual force to commit the assaults, such testimony was not necessary. "The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose."

Although Maddox had limited interaction with the victim during her young life, the evidence indicated that he nonetheless fulfilled the traditional paternal role of disciplinarian. The victim testified that, in situations other than the sexual abuse that is the subject of this appeal, Maddox had used corporal punishment and had otherwise exerted control over her behavior. The evidence was therefore sufficient to prove the element of force.

In arguing that the verdicts were against the manifest weight of the evidence, Maddox points to certain inconsistencies in the victim's testimony about the time and place of the sexual assaults. He also notes that the victim could have contracted chlamydia from Spikes during childbirth. But these and other alleged shortcomings in the state's case were matters for the trier of fact to weigh, and we cannot say that the jury lost its way in finding Maddox guilty....

(Doc. 15, Ex. 22, pp. 7-9) (sealed) (footnotes to state case citations omitted).

In the usual case, a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was

contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. A legal principle is "clearly established" for purposes of habeas corpus review "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes,* 130 S. Ct. 1171, 1173 (2010).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also*

14

*Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43.  Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, although the Ohio Court of Appeals cited only Ohio cases, it correctly identified the standard of review governing the resolution of sufficiency of evidence claims, which was established by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 (1979).  As the state appellate court recognized, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *see In Re Winship,* 397 U.S. 358, 363-64 (1970), when a prisoner raises a sufficiency of evidence claim in a petition for writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326.  Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.; see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983).

It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319.  Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the trier of fact which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

Petitioner was convicted in this case of a vaginal intercourse offenses occurring in 2001, vaginal intercourse offenses occurring in 2003, and fellatio offenses occurring in 2003.  As the Ohio Court of Appeals reasonably determined, there was sufficient evidence presented at trial to support his conviction for each offense.

15

The victim, who was born in February 1996 and eleven-years-old at the time of petitioner's trial, testified that in the relevant time frame between January and June 2001, when she was "around four, turning five years old" and living with her grandmother on Peete Street, the petitioner "put his private part in my mouth[;] ... touched my private part [and made] me touch his private part[;] ...[and made] our private part[s] touch each other[]" by "rub[bing] his private part on mine." (Doc. 15, Trial Tr. 409, 465) (sealed). The victim testified further that she observed "white stuff" come out of petitioner's "private part" when he was doing these acts. (*Id.*, Tr. 409-10). She said that at that time petitioner showed her a DVD of people doing the same "nasty things to each other" that her father did to her. (*Id.*, Tr. 411-412). The victim testified that at the time, she told her uncle and grandmother about what her father had done to her, and that her grandmother told her father that "if he ever do that again, ... she's gonna call the police on him." (*Id.*, Tr. 413-16).

The victim testified further that when she was "a little older, around seven or eight years old," which fell within the relevant 2003 time frame, she had "other encounters with her father." (*Id.*, Tr. 417). She said that in another building called the "Clubhouse," her father touched her "private parts;" "put his private part on [her] private part," which she identified as her "vulva;" and "put his private part in [her] mouth." (*Id.*, Tr. 418-19). She testified that his private part "got hard again and got long, and it got stiff, and then white stuff came out again." (*Id.*, Tr. 419). On cross-examination, the victim said that it "[s]ometimes" hurt when her father put his private part on her private part, although she conceded that it did not hurt the first time. (*Id.*, Tr. 465). On redirect examination, the victim averred that no other adult man "ever put [his] penis in [her] mouth" or on her "vulva" and that petitioner was the only "adult male who's ever done that to [her]." (*Id.*, Tr. 483-84).

The undersigned has reviewed the May 2004 videotaped interview of the victim by a social worker, when the victim was eight years old. The videotape was introduced into evidence by the State to rebut charges made by petitioner when he testified during the defense presentation that the victim had been "blackmail[ed]" by her mother, the police and prosecution "to take [him] out of the picture" by fabricating the rape charges. (*See id.*, Trial Tr. 920). The social worker, who was the only person present in the room with the victim during the interview, was careful to ensure before the questioning began that the victim felt at ease and was in a "safe" place where she was encouraged and expected to give truthful answers; the social worker also did not express any emotion or do anything else that could have led or influenced the victim in responding to the questions that were posed. As a result, the victim gave a credible

16

account of her father's conduct, which was consistent with her trial testimony.

Specifically, the victim stated in the interview that when she was four years old and living at her grandmother's house, her father showed her a DVD and did the same things to her that were depicted on the DVD of a "girl with her mouth on the boy's private part" and of a boy putting his "private part on the girl's private part." (*See* Doc. 33) (sealed). The victim said that she remembered these events from such an early age because it was the "first time" and because she told her uncle what had happened when he asked her how her day was and, at her uncle's urging, also told her grandmother, who then confronted her father. (*Id.*). She said the next time petitioner touched her private parts was in 2003 in his "clubhouse" downtown. She said he put his "private part" in her mouth and "yucky" white stuff came out in her mouth that he told her to swallow. She also said that he put his "private part on her private part," and that "white stuff" came out that he wiped off with a blue towel. The victim gave a detailed description of her father's "private part," circled where her "private part" was on a picture that the social worker showed her, and told the social worker that her father touched her private part with his private part "every time" she went to his house; she could not recall the number of times, but said that it was "more than three times." (*Id.*). She said that no one other than her father had touched her that way. (*Id.*).

A rational juror could infer solely from the victim's testimony that petitioner was guilty of the vaginal intercourse and fellatio offenses charged against him.

Petitioner contends in Ground Two that the evidence is insufficient to satisfy the element of penetration for the vaginal intercourse offense charged in Count One, which was allegedly committed in 2001. Petitioner points out that the victim testified that the "first time" did not hurt and that she never actually said petitioner placed his fingers or penis inside her vaginal cavity that "first time." (*See* Doc. 3, p. 7; *see also* Doc. 4, pp. 5-9; Doc. 15, Trial Tr. 618) (sealed). Under Ohio law, even a "slight" insertion into the entry of the vaginal cavity satisfies the "penetration" element of the rape offense. *See* Ohio Rev. Code § 2907.01(A); *see also State v. Carpenter*, 573 N.E.2d 1206, 1207-08 (Ohio Ct. App. 1989) ("In accordance with the overwhelming weight of authority that slight penetration is all that is necessary to constitute rape or statutory rape, the other elements of the crime being present, numerous courts have stated the rules that entry of the anterior of the female genital organ, known as the vulva or labia, is sufficient penetration to constitute rape although the vagina is intact and not penetrated in the least, and that it is not necessary that the hymen be

17

ruptured...."), *appeal dismissed,* 561 N.E.2d 543 (Ohio 1990). Contrary to petitioner's contention, the Court finds that the victim's testimony standing alone was sufficient to establish the penetration element of the rape offense. The victim specifically identified her "private part" as her vulva. A rational juror could have inferred that penetration, "however slight," occurred from the victim's testimony that her father touched her "private part" and "rubbed her private part" with his "private part" as depicted in the "nasty" DVD he made her watch.

In any event, as the Ohio Court of Appeals reasoned on direct appeal, a rational juror could infer that vaginal penetration happened based on the victim's diagnosis with vaginal and rectal chlamydia in June 2001 coupled with the petitioner's medical record showing that he visited the hospital on numerous occasions beginning on January 17, 2001 complaining of symptoms consistent with sexually-transmitted diseases, including chlamydia. (*See* Doc. 15, Trial Tr. 506, 508-09, 587-93) (sealed). Petitioner argues that this evidence was inadequate to establish a connection between him and the victim in 2001 because he did not test positive for chlamydia until 2003, when the victim no longer had it. He also contends that evidence was presented suggesting that the victim may have contracted chlamydia from someone else, including her mother during childbirth, before she was dropped off at her grandmother's house in the summer of 2000. (*See* Doc. 4, pp. 6-8) (sealed).

Evidence was presented at trial that the victim was taken to the hospital emergency room by her grandmother in July 2000 based on complaints by the victim that "her vagina hurt her" and that it hurt to walk. (*See* Doc. 15, Trial Tr. 503-04) (sealed). At that time, although a referral was made to a clinic that specialized in sexual abuse, which was not pursued by the victim's grandmother, no finding of sexual abuse was made, and the victim was not tested for a sexually-transmitted disease. (*Id.,* Tr. 505–06, 520). This evidence does support the defense position. However, viewing all the evidence presented at trial in the light most favorable to the prosecution as required under *Jackson*, a rational juror still could have rejected the defense theory and inferred that the victim contracted the chlamydia from petitioner.

No evidence was introduced conclusively establishing that (1) the victim contracted a sexually-transmitted disease before January 2001 either from her mother during childbirth or from another adult, or (2) more specifically, that she was suffering from chlamydia when she was taken to the emergency room in July 2000. Moreover, the victim unequivocally testified that petitioner was the only person who had engaged in sexual conduct with her. Dr. Shapiro testified that on January 17, 2001, during the

relevant time period in which the charged rape offense occurred, petitioner was diagnosed with an infection of the urethra, which is commonly caused by "g[]onnorhea *or chlamydia* or ... trichomon[a]s." (*Id.,* Tr. 587-88) (emphasis added). Petitioner was not tested at that time and was instead provided with three different antibiotics to treat those infections. (*Id.,* Tr. 589). The examining doctor specifically noted in petitioner's medical record, however, that "given the thin watery discharge, this is either chlamydia or trichomonas by history." (*Id.,* Tr. 658-59). The prosecutor further elicited on petitioner's cross-examination that on September 20, 2001, *after* the victim tested positive for chlamydia, petitioner visited a hospital and indicated for the first time that he "had exposure to a sexual partner with chlamydia." (*Id.,* Tr. 910-911). Although petitioner tested negative for either chamlydia or trichomonas on visits to health clinics and hospital emergency rooms in February through June 2001 and thereafter in September 2001, a rational juror could infer from petitioner's January 17, 2001 medical record, as well as petitioner's conduct after learning of the victim's June 2001 test results, that the victim contracted the chlamydia fround in her vaginal cavity from petitioner.[5]

Finally, petitioner argues in Ground Three of the petition that the evidence is insufficient to support his convictions for the fellatio and vaginal intercourse offenses charged in Counts Three and Four of the indictments, which allegedly happened between June 1 and September 1, 2003. (Doc. 3, p. 9) (sealed). Specifically, petitioner contends that no evidence was introduced to establish the time-frame of the offenses and that the victim gave inconsistent testimony about her age at the time of the offenses and the location where the charged sexual conduct took place. In addressing this argument, the Ohio Court of Appeals reasonably determined that the inconsistencies in the victim's testimony and the "other alleged shortcomings in the state's case were matters for the trier of fact to weigh." (Doc. 15, Ex. 22, p. 9) (sealed). Upon review of the trial transcript and the victim's videotaped interview in May 2004, which was introduced at trial as State's Exhibit 8, the Court is convinced that sufficient evidence was presented from which a rational juror could infer the essential elements of the fellatio and vaginal intercourse offenses that the victim

---

[5]It is noted that petitioner has argued that the victim's diagnosis with chlamydia in June 2001 cannot be relied on as evidence of penetration because the jury acquitted petitioner on the charges of anal intercourse with the victim despite the fact that the she tested positive for rectal chlamydia in June 2001. The record does not support this argument. Dr. Shapiro testified on cross-examination that in the case of children, it is possible for chlamydia to spread from the vagina to the anus. (Doc. 15, Trial Tr. 635) (sealed). Moreover, most importantly, in contrast to her testimony with respect to the vaginal intercourse offenses, the victim testified at trial that the petitioner "tried to put his private part in my butt," but was unable to do so. (*Id.,* Tr. 466).

19

testified had occurred in petitioner's "clubhouse" in 2003.

Accordingly, in sum, the undersigned concludes that petitioner is not entitled to relief based on the claims alleged in Grounds Two and Three of the petition because (1) to the extent petitioner alleges the verdicts of guilt were against the manifest weight of the evidence, he presents an issue of state-law only that is not cognizable in this proceeding; and (2) the Ohio Court of Appeals' adjudication of petitioner's constitutional sufficiency-of-evidence claims is neither contrary to nor involves an unreasonable application of the clearly-established standard of review enunciated by the Supreme Court in *Jackson*.

### C.  Petitioner Is Not Entitled To Habeas Relief Based On The Ineffective Assistance Of Appellate Counsel Claims Alleged In Ground Four, Which Are Waived And, In Any Event, Have Not Been Shown To Have Merit

In Ground Four of the petition, petitioner alleges that his counsel on direct appeal was ineffective because (1) she did not raise an ineffective assistance of trial counsel claim as an assignment of error as requested by petitioner; (2) she did not allege a constitutional violation in the second assignment of error challenging the admission during rebuttal of the victim's May 2004 videotaped interview with a social worker as a "prior consistent statement;" (3) she caused petitioner to miss the deadline for filing a timely appeal to the Ohio Supreme Court from the denial of his first application to reopen the direct appeal; and (4) she "did not argue assignments of error properly" and "disregarded multiple facts in the record."  (Doc. 3, p. 11) (sealed).

As an initial matter, the Court finds that petitioner has waived the claims alleged in Ground Four due to his numerous procedural defaults in the state reopening proceedings.[6]  Petitioner committed his first procedural default when he did not raise any of the claims alleged in Ground Four in his first timely-filed application for

---

[6]Although respondent has not argued in the return of writ that the ineffective assistance of appellate counsel claims alleged in Ground Four are subject to dismissal on waiver grounds, the Court *sua sponte* may consider the issue. *See, e.g., Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002); *see also Palmer v. Bagley*, 330 Fed.Appx. 92, 105-06 (6th Cir. May 29, 2009) (not published in Federal Reporter), *cert. denied*, 130 S.Ct. 1737 (2010).  Petitioner will have the opportunity to address the issue by way of objections to this Report and Recommendation before the district court enters a final Order disposing of the case. *Cf. Palmer*, 330 Fed.Appx. at 105.

20

reopening. (*See* Doc. 15, Ex. 26) (sealed). Second, even assuming that petitioner did present the claims alleged herein in that application, he committed another procedural default by failing to appeal the Court of Appeals' decision denying the application to the Ohio Supreme Court. *See, e.g., Howard v. Wolfe,* 199 Fed.Appx. 529, 532-33 (6th Cir. Oct. 12, 2006) (not published in Federal Reporter). Finally, as discussed above in addressing petitioner's first ground for relief, petitioner procedurally defaulted any claims alleged in Ground Four that were raised for the first time in his second reopening application because the Ohio courts relied on an adequate and independent state procedural ground in overruling the second application. *See supra* pp. 10-11. The claims are barred from review in the absence of a showing of cause and prejudice for the procedural defaults or that a fundamental miscarriage of justice will occur if petitioner's ineffective assistance of appellate counsel claims are not considered herein. *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Sykes,* 433 U.S. at 87.

In any event, petitioner has not demonstrated as required under the two-part test enunciated in *Strickland v. Washington,* 466 U.S. 668, 687-88, 695 (1984), that (1) his appellate counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case; and (2) a "reasonable probability" exists that, but for counsel's errors, the outcome of the appeal would have been different.

Appellate counsel is not constitutionally ineffective merely because he declines to raise a non-frivolous issue on appeal that was requested by the defendant. *Sharp v. Puckett,* 930 F.2d 450, 452 (5th Cir. 1991) (citing *Jones v. Barnes,* 463 U.S. 745, 751 (1983) (holding that an "indigent defendant [does not have] a constitutional right to compel appointed counsel to press nonfrivolous points [on appeal] requested by the client")); *see also Johnico v. Chrones,* 187 Fed.Appx. 701, 703 (9th Cir. June 9, 2006) (not published in Federal Reporter) ("Appellate counsel has no duty to raise every single issue requested by a defendant."), *cert. denied,* 549 U.S. 1037 (2006).

"Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Barnes,* 463 U.S. at 751-52); *see also Coleman v. Mitchell,* 268 F.3d 417, 430-31 (6th Cir. 2001), *cert. denied,* 535 U.S. 1031 (2002). It is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim on direct

appeal; however, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley,* 108 Fed.Appx. 375, 379 (6th Cir. Aug. 30, 2004) (not published in Federal Reporter), *cert. denied,* 543 U.S. 1160 (2005).

Here, petitioner has not demonstrated that his appellate counsel ignored an issue that was clearly stronger than those presented when she refused petitioner's request to raise an ineffective assistance of trial counsel claim on appeal. Indeed, upon review of the record, the undersigned agrees with appellate counsel's assessment that petitioner's trial attorney "did an outstanding job representing" petitioner at trial. (*See* Doc. 4, Ex. 2, Letter dated January 31, 2008) (sealed). Therefore, petitioner's first allegation of ineffectiveness is unavailing.

Second, petitioner is unable to prevail on the claim that his appellate counsel was ineffective because she did not raise a constitutional Confrontation Clause issue in arguing in the second assignment of error that the trial court erred in admitting the victim's videotaped interview during rebuttal. This case does not trigger Confrontation Clause concerns because the victim, who was the declarant in the videotape, testified at trial and was subjected to unrestricted cross-examination by defense counsel. *See, e.g., Crawford v. Washington,* 541 U.S. 36, 59 n.9 (2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.... The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."); *see also United States v. Owens,* 484 U.S. 554, 560 (1988); *Bryant v. Hudson,* No. 1:07cv372, 2008 WL 2949418, at *9, *19 (N.D. Ohio July 29, 2008) (unpublished) (and cases cited therein).

Petitioner's third allegation stemming from conduct that allegedly occurred in a reopening proceeding, *after* counsel's representation of petitioner on direct appeal had ended, also fails to trigger constitutional concerns. The Sixth Circuit has held that in accordance with Ohio's long-standing practice, reopening applications under Ohio R. App. P. 26(B), which fall "beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court," *Douglas v. California,* 372 U.S. 353, 356 (1963), are "part of the [State's] collateral, post-conviction process rather than direct review." *See, e.g., Lopez v. Wilson,* 426 F.3d 339, 344 n.3, 351-57 (6th Cir. 2005) (*en banc*) (and numerous state cases cited therein), *cert. denied,* 547 U.S. 1099 (2006); *see also Morgan v. Eads,* 818 N.E.2d

1157, 1160-61 (Ohio 2004) (and state cases cited therein).  Because petitioner's right under the Sixth Amendment to the effective assistance of counsel extended only to his first appeal as of right, which did not include his applications for reopening of the appeal, he is unable to prevail on any claim that his counsel, who no longer represented him, was constitutionally ineffective for failing to timely notify him of the appellate court's ruling on a reopening application. *Cf. Tolliver v. Sheets,* 594 F.3d 900, 929 (6th Cir. 2010); *see also Coleman,* 501 U.S. at 752-53; *Pennsylvania v. Finley,* 481 U.S. 551, 555-56 (1987); *Wainwright v. Torna,* 455 U.S. 586, 587-88 (1982) (*per curiam*); *Ross v. Moffitt,* 417 U.S. 600, 614-19 (1974).[7]

Finally, petitioner's fourth allegation that his appellate counsel "did not argue assignments of error properly" and "disregarded multiple facts in the record" is simply too conclusory to satisfy the *Strickland* standard.

Accordingly, in sum, the Court concludes that petitioner has waived the ineffective assistance of appellate counsel claims alleged in Ground Four of the petition due to his procedural defaults in the state.  In any event, he has not demonstrated that he is entitled to relief based on the merits of those claims.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural

---

[7]*Contrast Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 433-35 (6th Cir. 2006) (holding that the constitutional right to effective assistance of counsel during a direct appeal as of right does "not terminate the moment the court of appeals hands down its decision," but extends to include the duty of informing one's client of the outcome of the proceeding; such a claim of ineffectiveness on the part of petitioner's appellate counsel is not raised in the instant proceeding).

ruling.[8] A certificate of appealability also should not issue with respect to the claims alleged in the petition, which were addressed on the merits herein, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 8/13/10

cbc

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2010 habeas orders\09-480denypet.iac-waiv.sufficevid-rape-minor.iaac.wpd

---

[8]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any procedurally-defaulted grounds for relief. *See Slack,* 529 U.S. at 484.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Clarence Maddox,
    Petitioner

    vs                          Case No. 1:09cv480
                                (Dlott, C.J.; Hogan, M.J.)

Warden, Ohio State
Penitentiary,
    Respondent

# NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent ☐ Addressee<br>B. Received by ( *Printed Name* )   C. Date of Delivery |
| 1. Article Addressed to:<br><br>Clarence Maddox # 535 253<br>Ohio State Penitentiary<br>878 Coitsville — Hubbard Rd<br>Youngstown OH 44505 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*    ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7002 3150 0000 8389 8640 |
| PS Form 3811, August 2001 | Domestic Return Receipt      102595-02-M-1540 |

1:09 cv 480 (Doc. 44)